**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **RICHARD W. NOEL,** ) | **CASE NO. 4:12CV1062** |
| ) | |
| **Plaintiff,** ) | **JUDGE SARA LIOI** |
| ) | |
| v. ) | **MAGISTRATE JUDGE GREG WHITE** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | **REPORT AND RECOMMENDATION** |

Plaintiff Richard W. Noel ("Noel") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Noel's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be affirmed.

### I.  Procedural History

On September 28, 2009, Noel filed an application for POD, DIB, and SSI alleging a disability onset date of January 1, 2007, and claiming that he was disabled due to arthritis in his right hand as well as severe pain in his neck, back, shoulder, and legs. (Tr. 183.) His application was denied both initially and upon reconsideration.

On September 21, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Noel, represented by counsel, and an impartial vocational expert ("VE") testified. On October 13, 2011, the ALJ found Noel was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became final when the

Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age 45 at the time of his administrative hearing, Noel is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). (Tr. 24.) Noel has a high school education and past relevant work as a construction worker, tire repairer, and roofer. *Id.*

### *Hearing Testimony*

At the hearing, Noel testified to the following:

- He lives with his fiancé, his two children (ages 20 and 15), and three medium size dogs in a home owned by his fiance's mother. (Tr. 37.)

- He is right-handed. (Tr. 39.) He wears a brace on his left knee, right hand, and back almost daily. (Tr. 39-40.)

- He uses a TENS unit, once or twice a day, which helps relieve the pain. (Tr. 40.)

- He quit the last job he had because he had a drinking problem, mental issues, and grew tired of being sore. (Tr. 44.)

- He has not worked since 2007. *Id.* He is unable to work because of pain throughout his body, including his knees, back, neck, hand, and shoulders. (Tr. 45.) He has carpal tunnel syndrome in both hands and nerve damage in his lower legs. *Id.* His greatest limitation is the pain in his right hand. *Id.* It is arthritic and he needs a thumb joint replacement. *Id.* Medication relieved the pain in his back, neck and somewhat in his knees, but not his thumb pain. (Tr. 46.)

- His right hand/wrist swell when he uses them. (Tr. 46-47.)

- For 32 years, he has had severe addiction problems – alcohol, cocaine, meth, and marijuana. (Tr. 47 & 56.) Marijuana helps alleviate his pain. (Tr. 47.) He "quit" the first pain clinic after having dirty urine samples. (Tr. 48-49.) He stopped using marijuana about a month prior to the hearing so that another pain clinic would accept him. (Tr. 47.) He stopped the other addictions when he was released from rehabilitation, about a year and a half prior to the hearing. (Tr. 57.)

- His goal is to get back on his medications and have surgery to help alleviate the pain. (Tr. 47.)

- Carpal Tunnel Syndrome causes both hands to go numb, even when not using them. (Tr. 49.) It happens a couple of times per day, more often with his right hand. *Id.*

- He is prescribed Lisinopril and Simvastatin for high blood pressure and cholesterol, Buspar for anxiety, and Motrin 800 for pain. (Tr. 53.)

- He is not able to do any of the household chores. (Tr. 54.) He occasionally goes to the grocery store with his fiancé. *Id.* He seldom leaves the house as he does

> not like dealing with people. (Tr. 55.)

- Because of the pain in his hands, he is unable to open jars and bottles, or button shirts. (Tr. 57.) Because of pain in his shoulders, he is unable to lift a gallon of milk with either arm. (Tr. 63.)

- He can walk about fifteen minutes before needing a break. (Tr. 58.) He was experiencing pain in his lower back while sitting during the hearing. (Tr. 59.)

- He typically spends his day watching television. (Tr. 59.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Noel was insured on his alleged disability onset date, January 1, 2007, and remained insured through September 30, 2008. (Tr. 13.) Therefore, in order to be entitled to POD and DIB, Noel must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits.

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

*See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Noel established medically determinable, severe impairments, due to degenerative joint disease of the left shoulder, bilateral wrists and knees, chronic bicep tendon rupture, cervical degenerative disc disease, cervical stenosis, lumbar degenerative disc disease, lumbar facet joint disease, lumbar radiculopathy, bipolar disorder, anxiety and depression; however, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Noel was found incapable of performing his past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Noel was not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists

in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

Noel's contentions revolve around whether the diagnosis of Carpal Tunnel Syndrome ("CTS") was considered by the ALJ during the five-step analysis. (Doc. No. 13 at 12-16.) As

such, the Court will focus on the evidence in the record relating to Noel's hand/wrist problems.

On January 13, 2009, Noel was examined by David Lockshaw, M.D., after Noel reported falling down steps. (Tr. 273.) Dr. Lockshaw found minimal left shoulder pain and right hand swelling with decreased grip strength. *Id*.

In February, 2009, Noel complained of back, neck and right thumb pain to Faroq Mooda, M.D., but no other problems with his wrists or hands were noted. (Tr. 419.) An electrodiagnostic study was performed on May 27, 2009, by Dr. Mooda. (Tr. 260-262.) He noted a presumptive diagnosis of "cervical plexopathy without motor deficit." (Tr. 260.) A diagnostic summary was provided indicating irritation and suggesting "possible adjacent inflammatory activity," but no functional assessment was provided. *Id*.

On July 6, 2009, Thomas Ranieri, M.D., performed an orthopedic consultation. (Tr. 424-425.) Noel received injections to alleviate pain in his left knee and right wrist. (Tr. 424-425.) At a follow-up appointment in August, 2009, Noel reported that he injured his shoulder carrying I-beams. (Tr. 454.) He further reported that he had right wrist strain multiple times while working construction. *Id*.

Manual muscle testing conducted by Prabhudas R. Lakhani, M.D., on December 18, 2009, showed that Noel had normal "5" strength in his right wrist flexors and extensors, and "4+" strength in the left wrist flexors and extensors. (Tr. 295.) Noel's manipulation, pinch, and fine coordination were normal, and his grasp was normal on the left and four out of five on the right. (Tr. 295.) At a consultative exam on the same day, Noel's chief complaint was reported as "cervical and lumbar pain." (Tr. 299.) On examination, Noel complained of pain in the right thumb area, which was slightly swollen without redness or heat. (Tr. 301.) Dr. Lakhani noted that Noel had no sensory loss or muscle wasting. *Id*. The doctor assessed cervical and lumbar pain, a torn left bicep muscle, and drug abuse with marijuana. *Id.* As far as physical functioning, Dr. Lakhani reported that Noel "possibly could sit comfortably moving around a little bit for 4 hours at a time, six hours in total, can carry about 20-30 lbs short distances. He can walk a couple of blocks. Stand a total of up to 2 hours at a time." (Tr. 302.)

On January 25, 2010, Dr. Ranieri noted that Noel complained of pain in his right hand

6

and thumb and recommended an electromyogram ("EMG") and nerve conduction study ("NVC") of Noel's extremities.  (Tr. 448.)

In March, 2010, state agency physician, Paul Morton, M.D., after reviewing Noel's record, concluded that Noel retained the capacity to occasionally lift up to 20 pounds, frequently lift up to ten pounds, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in a workday, with the need to alternate between sitting and standing.  (Tr. 321-328 at 322.)  Dr. Morton also felt Noel was limited in his ability to push and/or pull with the upper extremities (Tr. 322), but suggested no manipulative limitations.  (Tr. 324.)  On May 4, 2010, Dr. Morton again reviewed the record, assessing Noel the identical RFC as in March, 2010.  (Tr. 363-370.)

At a visit with Dr. Ranieri on May 18, 2010, Noel reported that he could barely use his right hand, but that Flector patches did help with the pain.  (Tr. 446.)  It was also noted that Noel had returned to construction work five days earlier.  *Id*.

On May 20, 2010, after evaluating Noel's hand/thumb pain, Michael A. Jones, D.O., assessed degenerative joint disease of the right carpal metacarpal, right thumb, and malunion of the right fifth metacarpal.  (Tr. 371.)  A brace was prescribed, as well as continued use of the Flector patches.  *Id*.

On June 15 and 22, 2010, NVC tests were performed regarding Noel's numbness and tingling in both hands.  (Tr. 481-486.)  Dr. Ranieri, however, neither completed the "impression or recommendations" portions, nor did he sign the reports.

On September 10, 2010, state agency reviewing physician Teresita Cruz, M.D., affirmed Dr. Morton's May 2010 RFC noting "[t]here is no objective evidence to support that [Noel] has severe numbness in his hands due to [carpal tunnel syndrome.]"  (Tr. 442.)

Noel contends that the ALJ ignored the EMG and NVC studies diagnosing his CTS which should have been considered a severe impairment.  (Doc. No. 13 at 12-14.)  A severe impairment is defined by social security regulations as one which "significantly limits your physical or mental ability to do basic work activities."  20 CFR §§ 404.1520(c) & 416.920(c).  An impairment must be established by medical evidence consisting of signs, symptoms, and

7

laboratory findings, not merely by a claimant's statements. 20 CFR §§ 404.1508 & 416.908.

The Sixth Circuit construes the step two severity regulation as a "*de minimis* hurdle," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe."[2]  S.S.R. 96–3p, 1996 WL 374181 at *1. After the ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96–8p, 1996 WL 374184, at *5. When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 576–577 (6th Cir. 2009)

At step two, the ALJ found Noel had a severe impairment of degenerative joint disease in both wrists. (Tr. 15.) At step three, the ALJ noted that Noel did not meet Listing 1.02 (Major Dysfunction of a Joint(s) (due to any cause)) regarding his upper extremities.[3] (Tr. 16.)

In calculating the RFC, the ALJ addressed Noel's medical records regarding his wrist problems. The ALJ did not specifically reference the EMG/CVN tests, but he did indicate that "the totality of the medical records including the objective studies . . ., along with the claimant's subjective complaints would indicate that the claimant would be limited to the sedentary exertional level." (Tr. 22.) Specifically, the ALJ noted:

---

[2]The regulations describe a severe impairment in the negative: "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a).

[3]In Noel's reply brief, he asserts the ALJ should have considered CTS under a neurological listing as it caused hand weakness, poor gripping ability, and problems with fine finger movements. (Doc. No. 16 at 3-4.) This, he argues, would not be the same as hand/wrist impairments which are musculoskeletal in nature. *Id*. Noel, however, did not argue that he met any listing.

8

> The claimant has degenerative joint disease of the left shoulder, bilateral wrists and knees. (Exhibit 30F, p. 10; Exhibit 21F, p. 1) In January 2009, it was observed that the claimant had slightly reduced motor skills in his bilateral upper extremities, yet his extremities had no clubbing, cyanosis or edema and his pulses were normal. (Exhibit 30F, p. 18) In August 2009, it was observed that the claimant had decreased range of motion in his left shoulder, and swelling of his knee and wrist. (Exhibit 30F, p.10) However, it was also noted that the claimant had symmetric reflexes and normal sensation throughout. In September 2009, the claimant had wrist pain and pain upon extension of the left arm. (Exhibit 30F, p. 9) In October 2009, it was observed that the claimant had some sacral tenderness. (Exhibit 30F, p. 7) In November 2009, it was observed that the claimant had slightly reduced motor strength in his bilateral lower extremities and bilateral upper extremities. (Exhibit 30F, p. 5) However, it was also observed that his extremities had no clubbing, cyanosis or edema.
>
> In April 2010, it [sic] claimant showed positive signs during a wrist grind test. (Exhibit 21F, p. 3) However, the claimant retained good rotator cuff strength, his pulses were normal, and his extremities had no clubbing, cyanosis or edema. (Exhibit 30F, p. 3) In May 2010, the claimant reported that he had some bodily soreness, yet indicated that he had returned to his position as a construction worker. (Exhibit 30F, p. 2) In June 2010, it was noted that the claimant had an antalgic gait, yet his reflexes were symmetric and his sensory exam was normal. (Exhibit 30F, p. I)
>
> Throughout his treatment, the claimant was prescribed Vicodin, Ultram, Voltaren and Morphine to address his pain. (Exhibit SF, p. 2; Exhibit 2SF, p. 6; Exhibit 16F, p. 3; Exhibit 21F, p. 2) He was also referred to physical therapy and was provided with a TENS unit, a back brace and a cervical brace. (Exhibit SF, p. 6) The claimant also underwent epidural injections. (Exhibit 2SF, p. 13) Although the claimant continues to assert pain associated with his diagnoses of chronic bicep tendon rupture, cervical degenerative disc disease, cervical stenosis, lumbar degenerative disc disease, lumbar facet joint disease, lumbar radiculopathy and degenerative joint disease of the left shoulder, bilateral wrists and knees, the medical evidence of record indicates that the claimant's conditions presented limited symptoms and were well managed with prescription medications and therapy. Additionally, the evidence does not suggest that the claimant's impairments significantly interfered with his mobility or dexterity to a level that would prohibit him from engaging in sustained work. Although the claimant generally presents with complaints of pain findings are often, but not always, limited to reduced range of motion and tenderness. Conversely, it is almost universally noted that the claimant retains good strength throughout, no motor or sensory loss, no signs of atrophy or edema. Claimant continues to receive ongoing medical care which indicates that his conditions are legitimate and do impose some work limitations. However, that care has been conservative in the sense that it has been limited primarily to medication for pain control as opposed to more invasive treatment such as surgical intervention.

(Tr.21.)  The ALJ then calculated Noel's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can frequently use his bilateral upper extremity for fine and gross manipulation; can never climb ladders, ropes, or scaffolds; can only occasionally climb ramps and stairs; can frequently balance and stoop; can occasionally kneel, crouch and crawl; must

> avoid all exposure to hazards, including heights, machinery and commercial driving; is limited to performing simple, routine and repetitive tasks in a static environment with few changes and any changes would be explained; cannot work in an environment with fast paces [sic] production quotas; and can have no more than frequent superficial contact with others, superficial being defined as situations that would not require negotiation, arbitration, conflict resolution or the directions of others.

(Tr. 18.) The ALJ did not ignore Noel's wrist/hand problems, but considered them as degenerative joint disease with no mention of CTS. No treating physician restricted Noel in the use of his upper extremities. The only physical RFCs in the record were done by a state reviewing physician in March and May of 2010. Noel was found not to have any manipulative limitations, such as reaching in all directions (including overhead), handling, fingering, and feeling, but was found to be limited in his ability to push and/or pull with the upper extremities. (Tr. 322, 324 & 364, 366.) Moreover, on September 10, 2010, a state agency physician reviewed the record, including the June NVC tests, and specifically noted that "[t]here is no objective evidence to support that [Noel] has severe numbness in his hand due to CTS." (Tr. 442.) However, giving Noel the benefit of the doubt, based upon his subjective complaints, the ALJ found that Noel was limited to "frequent use of his bilateral upper extremity for fine and gross manipulation."[4] (Tr. 18.)

Though there is a medical opinion confirming Noel's diagnosis of CTS, he must also show that the condition causes vocational limitations. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (mere diagnosis of arthritis says nothing about the severity of condition); *see also Rivera v. Comm'r of Soc. Sec.*, 1998 WL 1085690 (1st Cir. Dec. 9, 1998) (ALJ confronted with only "raw medical data" regarding a diagnosis of CTS; no physician's findings as to vocational limitations as required by 20 CFR § 404.1513(b)(c)); *Crady v. Sec'y of Health & Human Servs.*, 835 F.2d 617, 620-621 (6th Cir. 1987) (per curiam) (no severe knee impairment where, among other factors, no evidence of restricted motion and only "minor" degeneration established by x-ray); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 464 (6th Cir.1987) (per curiam) (no severe back or leg impairment where pain severity not recorded, motion restriction

---

[4]S.S.R. 83-10 defines "frequent" as occurring from one-third to two-thirds of the time.

10

unquantified, and x-rays revealed "mild" abnormalities). Here, other than Dr. Morton limiting Noel's ability to push and/or pull in his upper extremities, no doctor reported that Noel's hand/wrist impairment, including CTS, limited his work abilities to beyond what was allowed in the RFC.

Furthermore, it is well established that the plaintiff—and not the ALJ—has the burden to produce evidence in support of a disability claim. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 280 Fed. App'x. 456, 459 (6th Cir. May 29, 2008) (*citing* 20 C.F.R. § 404.15129(a)). *See also Struthers v. Comm'r of Soc. Sec.*, 101 F.3d 104 (table), 1999 WL 357818 at *2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant. 20 C.F.R. §§ 416 .912, 416.913(d)."); *cf. Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (although an "ALJ has an inquisitorial duty to seek clarification on material facts," a plaintiff, who is represented by counsel, must provide a "factual record" relating to the length of his employment when his past work was part of the record and was the basis of the initial decision to deny benefits). *See also Hayes v. Astrue*, 2011 WL 901013, *5 (S.D. Ohio Feb. 14, 2011). Here, Noel did not provide evidence establishing that his CTS was disabling.

In regard to Noel's contention that the ALJ omitted from the decision the EMG/NCV studies conducted in June, 2010, the Commissioner asserts that those studies were not a part of the record as they were not timely submitted. (Doc. No. 14 at 9.) Noel counters, relying on *Madrigel v. Astrue*, 2012 WL 4060976 (N.D. Ohio Aug. 20, 2012). In *Madrigel*, the case was remanded because the ALJ failed to consider evidence that was received after the hearing date.

Here, it appears that the ALJ at the time of the decision did have the test results of the June EMG/NCV studies indicating that there was a problem associated with Noel's wrists. (Tr. 469, Exh. 33F.) The transcript of the hearing indicates that the last exhibit of record was Exhibit 32F. (Tr. 36) Exhibit 33F, containing test results from June, 2010, without a diagnosis, was not

11

in evidence at the time of the hearing, but appears to have been submitted prior to the ALJ's decision.[5] Exhibit 35F containing the actual diagnosis of CTS, was submitted one day prior to the date of the decision, but apparently not considered by the ALJ. (Tr. 488.) Nonetheless, as set forth previously, even though there is a diagnosis of CTS, no physician had found Noel to have functional limitations as a consequence. As such, Noel's assignment of error is without merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner should be affirmed.

s/ Greg White  
United States Magistrate Judge

Date:   March 18, 2013

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**

---

[5] It appears that this exhibit was faxed from the doctor's office to the ALJ's office between the dates of September 21, 2011 (hearing date) and September 22, 2011. (Doc. No. 469.)